UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80148-Cr-RYSKAMP/HOPKINS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

GARY KAFKA,
SONDRA PASTORE and
MICHAEL DISALVO,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT KAFKA'S AND DEFENDANT PASTORE'S MOTIONS TO SUPPRESS EVIDENCE (DEs 60, 61)**

THIS CAUSE is before the Court on general order of reference from United States District Court Judge Kenneth Ryskamp, for disposition of all pretrial criminal motions and/or the filing of a report and recommendation. (DE 29). Before the Court are Defendant Kafka's and Defendant Pastore's Motions to Suppress, filed on January 21, 2007 and January 23, 2007, respectively. (DEs 60, 61). The Government filed its response to these motions on January 29, 2007. (DE 62). Defendants filed no reply. This Court held an evidentiary hearing on February 6, 2007. These matters are now ripe for review.

**I. BACKGROUND**

Defendants are charged in a twenty-four count indictment alleging conspiracy to commit fraud, fraud, and in Defendant Kafka's case, making false representations to the United States Probation Office. (DE 1).

Defendants assert that evidence obtained in this case was derived from an initial investigative subpoena issued in violation of the Fourth Amendment. (DEs 60, 61). Defendants contend that the subpoena "was issued merely under the guise of a fishing expedition on the part of the government." (DE 61 at 3). Defendants concede that probable cause was not necessary for the Government to obtain the subpoena, but assert "that the government needed at least 'mere suspicion' that the defendant was involved in criminal activity." (DE 61 at 4, DE 60) (citing *United States v. Bisceglia,* 420 U.S. 141, 146-147, 95 S.Ct. 915, 919, 43 L.Ed.2d 88, 93-94 (1975); *Blair v. United States,* 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919)). Defendants contend that, as evidenced by witness testimony, the Government did not establish "mere suspicion," thus the subpoena was issued in violation of the Fourth Amendment. Defendants further contend that, as the subpoena was illegally issued, all evidence collected as a result of that subpoena should be suppressed as "fruit of the poisonous tree." (DE 61 at 5, DE 60) (citing *Wong Sun v. United States,* 371 U.S. 407 (1963). Defendants cite to the testimony of Agent Williams, offered at Defendant Kafka's sentencing hearing on December 1, 2006. (DEs 60, 61, ex. 1). Agent Williams testified that he believed that the U.S. Attorney's Office did not have specific information from Probation that Defendant Kafka had been preparing false mortgages. (DEs 60, 61 ex. 1). Agent Williams further testified that evidence of false mortgages was discovered only after the subpoenas were issued. (DEs 60, 61). Agent Williams testified that there was nothing in the public records, nor any other basis to believe that Defendant Kafka had prepared false mortgage applications or was involved in criminal activity. (DEs 60, 61, ex. 1).

The Government asserts that, not only did it have more than "mere suspicion" when applying

for the subpoena, but that the legal foundation of Defendants' motions is groundless and ill supported. (DE 62).

## II. EVIDENTIARY HEARING

An evidentiary hearing was held on February 6, 2007. Defendants were represented by Jack A. Fleischman, Esq. The Government was represented by AUSA Neil Karadbil.

The Court inquired into the Government's basis for asserting that the Government was not required to demonstrate any suspicion of illegal activity in order to obtain a subpoena. The Court then referred to *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), cited by the Government in its response. The Court questioned the Government concerning the case, which states that the grand jury "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." Id. at 642-43. The Court inquired as to the Government's opinion of whether the case sets a standard of "mere suspicion," as necessary to obtain a grand jury subpoena. The Government conceded that the Court's interpretation was reasonable. However, the Government asserts that the power of the grand jury subpoena is an executive function, and is not to be checked.

The Government presented one witness, United States Probation Officer Judith Guthrie. Ms. Guthrie testified that several issues caused concern regarding Defendant Kafka's supervised release.

First, there was a dispute regarding whether Defendant Kafka was required to pay restitution. Second, there was question whether Defendant was permitted to work in the mortgage industry. Defendant had been reporting to Probation that he was employed by Bob's Pianos. A December 2004 investigation by Ms. Guthrie revealed that Defendant Kafka had not been employed by Bob's

3

Pianos since September 2004. The issues of the restitution requirement and Defendant's employment were resolved by a hearing in front of Hon. William P. Dimitrouleas, United States District Court Judge.

Third, as a condition of his release, Defendant was required to submit monthly financial statements. These statements indicated that Defendant Kafka did not own a residence and did not obtain a mortgage. A search of public records by Ms. Guthrie indicated that Defendant Kafka was listed as an owner on the 40 Hibiscus Way residence, and had obtained two mortgages relating to the residence. Ms. Guthrie testified that one of the conditions of Defendant Kafka's supervised release was that he not incur new debt.

Ms. Guthrie testified that, although she had no knowledge of any fraudulent mortgage activity concerning third parties prior to the issuance of the grand jury subpoena, she was aware of several potential violations of Defendant Kafka's supervised release - that he was reporting no ownership interest in the Hibiscus Way residence, despite having ownership with his wife, and that he had incurred new debt in the way of two mortgage loans.

The Government entered several exhibits into evidence: (1) a collection of public record documents concerning ownership of the 40 Hibiscus Way residence; (2) a March 16, 2005, subpoena to the custodian of records of Express Capital to testify and present documents before the grand jury, and; (3) a residential loan application (an attachment to the subpoena). The Defense admitted a portion of a transcript from Defendant Kafka's sentencing hearing, which Defendants also attached to their motions at DEs 60, 61.

**III. ANALYSIS**

Defendants object to the admission of evidence obtained as a result of a subpoena issued by the grand jury. The subpoena, directed to the Custodian of Records of Express Capital Lending, sought "any and all records and documents relating to Gary Kafka and Sondra Pastore, including but not limited to, mortgage applications, financial submissions, proofs of payments, proofs of income and/or assets, loan agreements, from January 1, 2003, to present." (Gov. 1).

**A. The Standard Necessary to Acquire a Grand Jury Subpoena**

Defendants concede that probable cause was not necessary in order for the Government to obtain a subpoena. (DE 61). However, Defendants assert that at least "mere suspicion" is required to obtain a grand jury subpoena, and that the Government did not have mere suspicion, but was simply using the subpoena process as a "fishing expedition." Defendants cite *United States v. Bisceglia*, 420 U.S. 141, 1456-147, 95 S.Ct. 915, 919, 43 L.Ed.2d 88, 93-94 91975) and *Blair v. United States*, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919) in support of their assertion that at least mere suspicion is required.

The Government asserts that the case law cited by Defendants in support of their motions fail to legally support their position. (DE 62). The Government further asserts that "mere suspicion" is not required in order to obtain a subpoena. (DE 62). "Assuming arguendo, the probation officer suggested the grand jury subpoenas based on nothing, the subsequent investigation could not be negated." (DE 62 at 6).

The Supreme Court has long held that the grand jury institution is one "in which laymen conduct their inquiries unfettered by technical rules." *Costello v. United States*, 350 U.S. 359, 364,

76 S.Ct. 406, 100 L.Ed. 397 (1956). In *Blair*, the Court holds that the scope of grand jury inquiries is not to be limited by "questions of propriety or forecasts of the probably result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning." *Blair,* 250 U.S. 282.

*Bisceglia* and *United States v. Morton Salt,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), support the argument that "mere suspicion" is required to obtain a grand jury subpoena. *Bisceglia*, 420 U.S. at 146-48; *Morton Salt*, 338 U.S. at 642-43. Although these cases concern the authority of administrative agencies, the Court in each case analogizes to the grand jury to demonstrate the investigative power of the agency. *Bisceglia*, 420 U.S. at 146-48; *Morton Salt*, 338 U.S. at 642-43 (the grand jury "does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."). Moreover, in *Branzburg v. Hayes,* 408 U.S. 665, 701-2, 92 S.Ct. 2646, 33 L.Ed. 626 (1972), the Supreme Court held that a grand jury investigation "may be triggered by tips, rumors, evidence proffered by the prosecutor, or the personal knowledge of the grand jurors."

This Court, however, need not reach a conclusion as to whether "mere suspicion" is required to obtain a grand jury subpoena. As discussed below, this Court concludes that the Government has more than satisfied the "mere suspicion" standard.

**B. The Government Exceeded the Level of "Mere Suspicion"**

Defense asserts that, as supported by the testimony of Agent Williams, the Government failed to meet even the low burden of mere suspicion. (DEs 60, 61). The subpoena seeks documents relating to the Defendants' loan and mortgage activity. (Gov. 2). As discussed above, Agent Williams testified at the sentencing hearing that the Government had no evidence of fraudulent loan activity prior to the issuance of the subpoena. (DEs 60, 61, ex. 1). However, according to witness testimony, the Government had already obtained public records indicating that Defendant Kafka had violated the terms of his supervised release by incurring debt and by submitting fraudulent financial reports. Furthermore, the Government was aware of Defendant Kafka's previous conviction for, *inter alia*, mail fraud. Case No. 00-8099-WPD. The Government clearly had more than "mere suspicion" that the Defendants were violating the law. The fact that the subpoena led investigators to allegedly fraudulent loan activity does not alter the fact that the Government had sufficient cause to seek a grand jury subpoena based upon Defendant Kafka's apparent supervised release violations.

**IV. RECOMMENDATION**

For the reasons stated above, this Court **RECOMMENDS** to the District Court that the Defendants' Motions to Suppress be **DENIED**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Kenneth L. Ryskamp, within ten (10) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may limit the scope of

appellate review of factual findings contained herein.  See *United States v. Warren*, 687 F.2d 347, 348 (11th Cir.1982) cert. denied, 460 U.S. 1087 (1983).

**DONE and SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 8 day of February, 2007.

/s/ James M. Hopkins
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to:
AUSA Neil Karadbil
Jack A. Fleischman, Esq.
Sidney Z. Fleischman, Esq.
Honorable Kenneth L. Ryskamp